48 CCPA

**HOME DECORATORS, INC., Appellant,**

v.

**EKCO PRODUCTS COMPANY, Assignee of The Autoyre Company, Appellee.**

**Patent Appeal No. 6668.**

United States Court of Customs and Patent Appeals.

July 12, 1961.

Thomson & Roessel, Pittsford (Theodore B. Roessel, Pittsford, of counsel), for appellant.

Fidler, Beardsley & Bradley, Chicago, Ill. (Roy E. Petherbridge, Raymond E.

Fidler, and Charles W. Bradley, Jr., Chicago, Ill., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board, 123 USPQ 554, dismissing an opposition to the registration of "PRESTIGE" as a trademark for bathroom, kitchen, and closet accessories, namely, racks, hooks, shelf brackets, towel rings, soap dishes, toothbrush holders, tumbler holders, and toilet paper roll holders.

The applicant, appellee here, is the Ekco Products Company, assignee of the original applicant, the Autoyre Company. Use of the mark by applicant since June 18, 1957, is alleged. The opposer-appellant is Home Decorators, Inc., owner of the registered marks, "PRESTIGE"[1] and "PRESTIGE****PLATE,"[2] for silver plated flatware.

During the period February 4, 1944, to September 24, 1954, opposer's silver plated flatware bore the mark "PRESTIGE****PLATE." After the latter date, opposer started to use and still uses "PRESTIGE" as a trademark on silver plated flatware and carving sets.

Opposer sells its silver plated flatware directly to the ultimate consumer. A sales representative goes to the home of a prospective purchaser. Orders obtained thereby are submitted to opposer's home office for acceptance and the goods are shipped by opposer directly to the customer's home. Opposer's flatware has not been sold through any other channels of trade and has been widely advertised on television and in nationally distributed consumer magazines.

It is stipulated that applicant's bathroom, kitchen, and closet accessories are distributed through wholesale, retail, and jobber outlets.

Finding that the only issue was whether applicant's use of "PRESTIGE" for kitchen, closet, or toilet accessories is likely to cause confusion, mistake or deception of purchasers, the board dismissed the opposition, stating:

"The word 'PRESTIGE' possesses an inherent connotation of quality, and, as shown by the record, it has been registered many times for many different kinds of merchandise.

"While the products of both parties may be found in certain kinds of retail stores, they are not likely to be displayed or sold together therein, and they are not of a character which purchasers would be likely to attribute a common origin.

"Considering the nature of the mark 'PRESTIGE', and the differences between the goods, it is concluded that confusion or mistake or deception of purchasers is not likely to occur."

Opposer now maintains that it should have prevailed on either one or both of two grounds, viz., it will be damaged by the use by applicant of the mark on its goods because such use is likely to cause confusion or mistake or to deceive purchasers; the use of the mark by applicant on its goods "would clearly cause great damage to the image which Opposer has carefully built up with regard to his [sic] mark 'PRESTIGE'."[3]

 Since the marks are the same, we must turn to the nature of the mark, the goods, and the channels of trade in considering the first contention. "Pres-

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Reg. No. 659,795, issued March 25, 1958.

2. Reg. No. 416,948, issued October 9, 1945, and republished August 28, 1951, under the act of 1946.

3. For the purposes of this discussion, we draw no significant distinction between "PRESTIGE" and "PRESTIGE * * * * PLATE."

tige" is a common English word suggesting that the goods to which it is applied have attained a commanding position or are highly regarded. When one selects such a word for a trademark, he must realize that the scope of protection will be more limited than if he had chosen an arbitrary or fanciful word. In fairness to all others who desire to use the same word in a suggestive manner as a trademark, the protection to each user will usually be carefully confined to the particular goods or those closely related since its source-identifying qualities are equally limited.

■ We are of the opinion in this instance that the goods of the respective parties are not so related that the use of "PRESTIGE" by the applicant on its goods is likely to cause confusion among purchasers.

As for the channels of trade, according to the record, they are now definitely different, but even if the goods of both were sold in the same store, we think it is unlikely that confusion would result.

Coming now to the question of opposer's contention that it should prevail regardless of purchaser confusion because of the alleged dilution of opposer's mark by applicant, we do not agree with opposer's position in this matter either.

Without passing on this question, this is not a case which would be controlled by this principle in any event. Since "Prestige" is a common English word which has been registered in one form or another as a trademark some 28 times, according to the record, for a variety of goods such as glass tumblers, onion-skin paper, grease, and sausage and meat loaf binder, we doubt that the registration of this word for bathroom, kitchen and closet accessories will dilute the word for trademark purposes or "cause great damage to the image" to any appreciable degree greater than has already been done by these other registrations. We affirm the decision of the Trademark Trial and Appeal Board.

Affirmed.